## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ROBERT MAZZONI,

   Plaintiff,

v.

ANDREW J. JARBOLA, LACKAWANNA COUNTY, LACKAWANNA COUNTY DISTRICT ATTORNEY'S OFFICE, and LACKAWANNA COUNTY DETECTIVES ASSOCIATION,

   Defendants.

CIVIL ACTION NO. 3:11-CV-2244

(JUDGE CAPUTO)

## **MEMORANDUM**

Presently before the Court is the Motion to Dismiss by Defendant Lackawanna County Detectives Association ("LCDA"). Because Plaintiff Robert Mazzoni properly states claims for constitutional violations under 42 U.S.C. § 1983 and a violation of the duty of fair representation, the motion will be denied.

### I. Background

The facts as alleged in the complaint are as follows:

Starting on about April 8, 1992, Plaintiff Robert Mazzoni was employed as a Detective by Defendants Lackawanna County and the Lackawanna County District Attorney's Office. The terms and conditions of his employment were governed by a collective bargaining agreement between the County, the District Attorney's Office, and the employee's union, the LCDA. Throughout his employment, Mr. Mazzoni was a good, professional, and competent employee.

In February of 2010, Mr. Mazzoni spoke with Defendant Andrew Jarbola, the District

Attorney of Lackawanna County and the decision maker with regard to employment for the District Attorney's Office. Mr. Mazzoni advised Mr. Jarbola that he was considering running for the position of Lackawanna County Sheriff. Mr. Jarbola responded by telling Mr. Mazoni that he should not run and that he would not win the election. Mr. Jarbola supported the incumbent for the sheriff position, who was his political ally.

On about April 12, 2010, Mr. Jarbola terminated Mr. Mazzoni's employment. Mr. Mazzoni did not receive written notice of the allegations against him and did not receive a hearing. Mr. Jarbola sent a letter confirming Mr. Mazzoni's termination on May 28, 2010. The letter offered reasons for the termination, but those reasons were pretextual. Mr. Jarbola actually terminated Mr. Mazzoni because Mr. Mazzoni expressed a desire to run for the sheriff position, and Mr. Jarbola did not want him to run.

On about June 4, 2010, Mr. Mazzoni and Thomas Davis, the LCDA president, submitted a grievance to Mr. Jarbola. The grievance alleged that there was no just cause for Mr. Mazzoni's termination, in violation of his collective bargaining agreement. Mr. Jarbola denied the grievance on June 8, 2010, claiming there was just cause for the termination.

Mr. Davis advised Mr. Mazzoni that the LCDA would continue with the grievance procedure by filing for arbitration. But on September 13, 2010, Mr. Jarbola contacted Christopher Kolcharno, an LCDA member, and asked him to set up a special meeting of the LCDA. Mr. Jarbola wanted to convince the union to not proceed with arbitration on Mr. Mazzoni's grievance.

On about September 13, 2010, the LCDA held a meeting where a member proposed that the union vote to not proceed with Mr. Mazzoni's grievance. Mr. Jarbola had advised the union members that if there was an arbitration of Mr. Mazzoni's grievance, information

2

might be produced that would implicate various LCDA members and subject them to criminal liability. Mr. Davis determined that the LCDA would defer voting on the issue until it consulted with an attorney.

On about September 28, 2010, as a result of Mr. Jarbola's influence, the LCDA voted to not proceed to arbitration with Mr. Mazzoni's grievance. Because of his termination, Mr. Mazzoni has suffered financial loss as well as embarrassment, humiliation, harm to his reputation, and emotional distress.

Mr. Mazzoni filed suit in the Middle District of Pennsylvania on December 2, 2011. His complaint contains four causes of action. Count I is a claim against the County and the District Attorney's Office for a violation of the First and Fourteenth Amendments pursuant to 42 U.S.C. § 1983. Count II brings the same § 1983 claim against Mr. Jarbola. Count III brings the same § 1983 claim against the LCDA. Count IV is a claim against the LCDA for a breach of the duty of fair representation. Mr. Mazzoni seeks monetary damages and equitable remedies.

The LCDA filed the instant motion to dismiss on February 7, 2012. The LCDA moves to dismiss Counts III and IV of Mr. Mazzoni's complaint. The motion has been fully briefed and is ripe for disposition.

## II. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007), meaning enough factual allegations "'to raise

a reasonable expectation that discovery will reveal evidence of'" each necessary element, *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). The pleading standard of Federal Rule of Civil Procedure 8 does not require "detailed factual allegations," but "[a] pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1959 (2009) (quoting *Twombly*, 550 U.S. at 555). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).

Thus, when determining the sufficiency of a complaint, a court must undertake a three-part inquiry. *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). The inquiry involves: "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Id.* A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States,* 220 F.3d 169, 178 (3d Cir. 2000). Under Rule 12(b)(6), a dismissal based on the statute of limitations is appropriate only where the untimeliness of the claim is clear on the face of the complaint. *Bethel v. Jendoco Const. Corp.*, 570 F.2d 1168 (3d Cir. 1978) (citations omitted).

### III. Discussion

**A. Section 1983**

The LCDA argues that Mr. Mazzoni's claim under 42 U.S.C. § 1983 must be dismissed because the LCDA did not act under color of state law. Section 1983 states that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage .

. . subjects, or causes to be subjected, any citizen . . . or any other person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." To prevail in an action under § 1983, a plaintiff must demonstrate: (1) a violation of a right secured by the Constitution or laws of the United States; and (2) that the alleged deprivation was committed by a person acting under color of state law. *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000); *Moore v. Tartler*, 986 F.2d 682, 685 (3d Cir. 1993). "Action under color of state law 'requires that one liable under § 1983 have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011) (quoting *Abbott v. Latshaw*, 164 F.3d 141, 146 (3d Cir. 1998)).

The LCDA's motion will be denied because Mr. Mazzoni has sufficiently alleged that the LCDA conspired with the District Attorney's Office. Private citizens act under color of law when they conspire with state officials. *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980). In order to prove a conspiracy existed, a plaintiff must present "enough factual matter (taken as true) to suggest that an agreement was made." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010) (quoting *Twombly*, 550 U.S. at 556) (internal quotation marks omitted)). Here, Mr. Mazzoni alleges that the LCDA had planned on proceeding to arbitration with his grievance until Mr. Jarbola spoke with the union members and convinced them to agree to vote against the arbitration. These allegations are sufficient to establish concerted action between the LCDA and Mr. Jarbola such that the LCDA acted under color of state law. Therefore, the § 1983 claim against the LCDA will not be dismissed.

**2. Breach of the Duty of Fair Representation**

The LCDA also moves to dismiss Mr. Mazzoni's claim for breach of the duty of fair representation, arguing that Mr. Mazzoni has not shown bad faith on its part. Unions have a statutory duty to fairly represent all employees within the appropriate bargaining unit.[1] *Vaca v. Sipes*, 386 U.S. 171, 177 (1967). The duty of fair representation requires a union "to serve the interests of all its members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Id.* An employee may bring suit against a union that breaches this duty. *Id.* at 186. But there is only a breach of the statutory duty of fair representation "when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Id.* at 190. A union does not breach "merely because it settled grievance short of arbitration," *id.* at 192, even where the underlying grievance was meritorious, *id.* at 195.

The LCDA's motion will be denied because Mr. Mazzoni has pleaded sufficient facts to establish the union's bad faith. Mr. Mazzoni does not merely argue that the LCDA settled his grievance short of arbitration. Rather, he asserts that the LCDA abandoned its plans to take his grievance to arbitration after making an agreement with his employer, the District Attorney's Office. Thus, according to the complaint, the union did not act out of a good faith interest in representing Mr. Mazzoni. Because the

---

[1] The duty of fair representation discussed in *Vaca* is rooted in federal labor statutes, *see Vaca v. Sipes*, 386 U.S. 171, 177-81 (1967), while the LCDA is governed by state statutes: Act 111 of 1968, 43 P.S. § 217.1, *et seq.*, and the Pennsylvania Labor Relations Act ("PLRA"), 43 P.S. § 211.1, *et seq.* However, Pennsylvania courts apply the same duty of fair representation standard set forth in *Vaca*. *See, e.g.*, *Martino v. Transp. Workers' Union of Phila., Local 234*, 480 A.2d 242, 245-48 (Pa. 1984).

6

complaint alleges that union acted in bad faith, Mr. Mazzoni has stated a claim for a breach of the duty of fair representation.

Mr. Mazzoni may also properly seek monetary damages for this claim. The LCDA argues that under *Waklet-Riker v. Sayre Area Education Association*, 656 A.2d 138, 141 (Pa. Super. Ct. 1995),[2] Mr. Mazzoni's only available remedy is an injunction compelling arbitration of his grievance. It concedes, however, that a court may grant money damages based on a breach where "the employee can show by specific facts that the employer actively participated in the union's bad faith or conspired with the union to deny the employee his rights." *Id.* As noted above, Mr. Mazzoni's complaint contains specific factual allegations that the LCDA conspired in bad faith with the District Attorney's Office. Thus, his claim for monetary damages will not be dismissed.

## IV. Conclusion

For the reasons stated above, Defendant's motion to dismiss will be denied. An appropriate order follows.

 June 11, 2012                                                                         /s/ A/ Richard Caputo
Date                                                                                          A. Richard Caputo
                                                                                              United States District Judge

---

[2] *Waklet-Riker* addressed an employee's remedy under the Public Employe [sic] Relations Act, 43 Pa. Stat. Ann. § 211.1 *et seq.*, and not under Act 111. But because the legislature enacted the statutes for the same purpose, *see Phila. Housing Auth. v. Pa. Labor Relations Bd.*, 499 A.2d 294, 298 (Pa. 1985), the analysis from *Waklet-Riker* is applicable to this case.