**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ROBERT MAZZONI,<br><br>　　　Plaintiff,<br><br>　　　v.<br><br>ANDREW J. JARBOLA, et al.,<br><br>　　　Defendants. | CIVIL ACTION NO. 3:11-cv-2244<br><br>(JUDGE CAPUTO) |

**MEMORANDUM**

Presently before the Court is the Motion for Summary Judgment of Defendants Andrew J. Jarbola, Lackawanna County, and Lackawanna County District Attorney's Office (collectively the "County Defendants") (Doc. 30), and the Motion for Summary Judgment of Defendant Lackawanna County Detectives Association ("LCDA") (Doc. 35). This dispute arises out of Plaintiff Robert Mazzoni's ("Mazzoni") termination from employment as a detective at the Lackawanna County District Attorney's Office ("DA's Office").

Mazzoni asserts he was fired because he expressed his intent to run for office against an ally of District Attorney Jarbola ("DA," "Jarbola"), in violation of his "rights of speech, association, political affiliation and his exercise of political freedom, as guaranteed by the First and Fourteenth Amendments of the United States Constitution." (*Compl.,* Doc. 1, ¶ 43.)  The County Defendants assert that Mazzoni was terminated for cause.  Mazzoni also asserts that the LCDA, his union, conspired with the DA's Office to violate his rights, and breached their duty to provide Mazzoni with fair representation. Because Plaintiff has set forth enough evidence, taken in the light most favorable to him and resolving all possible inferences in his favor, to demonstrate that there is a dispute of material fact as to the reasons why Mazzoni was fired and the reasons why the LCDA stopped the grievance process, the Defendants' Motions for Summary Judgment will be denied.  Because retaliatory motive is not enough to meet the intent standard required of a Defendant in order to receive punitive damages, and Plaintiff has not demonstrated

any facts to indicate that the County Defendants acted with anything more than retaliatory intent in terminating him, County Defendants' motion to dismiss Plaintiff's request for punitive damages for his constitutional claim will be granted.

**I. Background**

**A. Factual Background**

    **1. Robert Mazzoni's Disciplinary History**

Mr. Mazzoni began working as a detective for the Lackawanna County District Attorney's Office in April 1992. (Doc 32, ¶ 1.) At that time, Mr. Jarbola was not yet the District Attorney. (Doc. 51, *Pl. SMF*, ¶ 2). Lackawanna County and the DA's Office were Mazzoni's employers. (*Compl.*, ¶ 25.) The District Attorney, in his official capacity, was the final authority and ultimate repository of the County's power in regard to the Plaintiff's employment. (*Id.*)

Mazzoni's employment record reveals multiple disciplinary infractions and warnings. In 1992, Mazzoni was notified in writing that a District Judge had told the DA's Office that he had outstanding traffic citations, which he needed to pay. (Doc. 33-20, 2.) He was not disciplined, but was informed that "any further violations will be result [sic.] in disciplinary procedures." (*Id.*) Later in 1992, Mazzoni received a disciplinary letter for failing to report on a day when he was scheduled to work. (Doc. 33-19.) Mazzoni's personnel file contains a handwritten note from December 1992, which appears to be a list of his infractions, all regarding use of his county car. (Doc. 33-18.) Mazzoni admits that his county car was taken from him in the 1990s for improper use. (Doc. 51, ¶ 5.)

In 1995, a detective with the DA's Office's specialized drug task force sent Mazzoni's supervisor a memo complaining about Mazzoni's behavior, and asking that Mazzoni stop conducting independent drug investigations. (Doc. 33-16, 4.) It is unclear whether these matters were investigated, and whether Mr. Mazzoni was notified of this letter. In 1999, Mazzoni wrote a letter confirming that a two-week suspension without pay was a "just punishment" for an unnamed violation. (Doc. 33-17.)

In 2000, a memo to Mazzoni indicated that while his work quality was "very good,"

Jarbola, by then District Attorney, was upset that Mazzoni had not turned in several arrest reports, following complaints from an Assistant District Attorney, and that failure to complete reports in the future would result in disciplinary action.  (Doc. 33-15.)  At the time, Mazzoni had a medical condition, and Mazzoni asserts that is why he failed to complete his paperwork.  (*Id*.; Doc. 51 ¶ 8.)  In May 2001, a personnel file memo documented Mazzoni's absence without leave for two days.  (Doc 14-30.)  Mazzoni asserts that there is no indication that this was ever investigated or confirmed, and was never discussed with him.  (Doc. 51, ¶ 9.)

In August 2001, Chief Thomas K. Dubas ("Dubas") wrote a memo to Jarbola, detailing what he described as Mazzoni's ongoing "open, flagrant" disobedience and improper behavior.  (Doc. 33-13.)  He wrote that Mazzoni's actions were going to lead to a lawsuit, and that Mazzoni was a danger and embarrassment to the office.  He urged Jarbola to take immediate action.  (*Id.*)  His allegations included multiple instances of Mazzoni mishandling drug evidence, lying about cases and his attendance, and generally disobeying orders.  (*Id.*)  It is not clear that this was discussed with Mazzoni, or that any disciplinary action was taken in response to the memo.  (Doc. 51, ¶ 10.)

In February 2004, Mazzoni was suspended without pay for "not following proper office procedures."  (Doc. 33-12.)  In May 2005, Mazzoni was suspended for three days without pay for having glasses of wine on his table while at lunch during the work day.  (Doc. 32, ¶ 12; *see also* Doc. 33-40, *Pl. Dep.* 37:7-38:5.)  In December 2005, Mazzoni's pay was docked for ten days for disciplinary reasons.  (Doc. 33-10.)  Also in 2005, Mazzoni was suspended a second time, though the parties dispute why.  (Doc. 32, ¶ 14; Doc. 51, ¶ 14.)  At some point, Jarbola removed Mazzoni's county cell phone for excessive personal calls.  (Doc. 32, ¶ 5.)  In 2009, Mazzoni was verbally reprimanded for refusing to attend a scheduled presentation at a local high school.  (Doc. 32, ¶ 17.)

A number of other detectives testified in depositions that in 2008 and 2009, there were instances when Mazzoni would deviate from protocol and run into a house after a suspect, or turn a "routine bust" into a "buy bust," which made them feel like they were at

risk.  (Doc. 32, ¶ 18.)  None ever filed a written complaint, and Mazzoni received no discipline for these actions.  (Doc. 51, ¶ 18.)  Mazzoni disputes that the officers were ever at risk, and also disputes the underlying facts.  (*Id.*)  Jarbola testified that from what he knew prior to when Mazzoni was terminated, he did not feel that Mazzoni's actions endangered other officers or detectives.  (*Id.*)

Mazzoni "produced results" at his job, and had the most arrests and convictions of any officer in the drug unit since Jarbola took office.  (Doc. 32, ¶ 27-8.)  From December 14, 2005, to the date of his termination on or about April 12, 2010, his personnel file contains no written record of any disciplinary action.  (Doc. 51, ¶ 31.)

The County Defendants assert that officers and agents from the State Police, Attorney General's Office, Federal Bureau of Investigations and the local police all refused to work with Mazzoni.  (Doc. 32, ¶ 21.)  Mazzoni disputes this.  (Doc. 51, ¶ 21.)  The DA's Office wrote that Mazzoni socialized with Al Abda, a convicted felon, which concerned the DA's office.  (*Id.* at ¶ 19.)  Jarbola had also socialized with Mr. Abda.  (*Id.*)

**2. Events Immediately Preceding Mazzoni's Termination**

On or about February 2010, Mazzoni asserts that he told Jarbola that he intended to run for sheriff.  (Doc. 51, *Pl. SMF,* ¶ 2.)  Jarbola vehemently denies this.  (Doc. 58, ¶ 2.)  Mazzoni contends that when he informed Jarbola of his intentions, Jarbola told him not to run.  (Doc. 51, *Pl. SMF,* ¶ 3.)  Mazzoni asserts that this was because Jarbola was a political ally and "close friend" of the incumbent sheriff, John Szymanski.  (*Id.* at ¶¶ 4-5.)  Jarbola and Szymanski served together on the prison board, and Jarbola made political contributions to Szymanski's campaign.  (*Id.*)  Jarbola says that he and Szymanski are friends, but he did not contribute more than $100 to his campaign, and never campaigned for him.  (Doc. 58, ¶¶ 4-5).

Mazzoni contends that after he told Jarbola about his intention to run for sheriff, Jarbola's demeanor toward him changed, and he was no longer friendly.  (Doc. 41, *Pl. SMF,* at ¶ 8.)  Jarbola asserts that in 2008, Paul Mazzoni, father of Robert Mazzoni, had told Jarbola that his son was planning to run for sheriff.  (Doc. 32, ¶ 47.)

4

On or about April 10, 2010, Mazzoni saw a former confidential information in an oncoming vehicle. (Doc. 51, ¶ 11.) Mazzoni knew that there was a felony warrant out for the former informant, so turned on his emergency lights and turned around to stop the vehicle. (*Id.*) He ran through two red lights and exceeded the speed limit in pursuit. (*Id.* at ¶ 16.) The DA's Office contends that this was a violation of policy, but Mazzoni asserts that there was no official pursuit policy at that time. (*Id.*)

An argument between Mazzoni and Jarbola ensued as a result of this incident. Jarbola accused Mazzoni of lying about his attempt to apprehend the informant, and of trying to get another detective to file a false report to "cover" for Mazzoni. (*Id.* at ¶ 13.) Jarbola testified that most of the reason for Mazzoni's termination was because Mazzoni lied about this incident, encouraged the filing of a false report, and threatened another detective. (*Id.*)

Jarbola testified that Mazzoni's lies had no effect on any of the office's cases and that there was probably no negative effect of Mazzoni demanding another detective lie for him. (*Id.* at ¶¶ 18-19.) Jarbola also testified that what he really took offense to was lying, and that he was upset because Mazzoni lied in a report and to him. (*Id.* at ¶ 20.)

**3. Mazzoni's Termination and Subsequent Grievance**

On April 12, 2010, Jarbola met with Mazzoni and told him that he could no longer work as a detective. (Doc. 51, *Pl. SMF,* ¶ 9.) Jarbola told him that he could "resign, retire, or find another job." (*Id.*) On May 26, 2010, Jarbola met with Mazzoni and informed Mazzoni of the disciplinary issues behind Mazzoni's termination. (*Id.* at ¶ 22.) Jarbola provided a list of reasons for Mazzoni's termination. (*Id.* at ¶¶ 33-4.) Included in this list were submitting a false reimbursement and possible violations of the Wiretap Act. (*Id.* at ¶¶ 34-6.) Jarbola later testified that the false reimbursement had nothing to do with the termination. (*Id.* at ¶ 35.) Jarbola also testified that he did not know of the possible wiretap violations until after Mazzoni was terminated. (*Id.* at ¶¶ 36-7.)

Mazzoni was given the opportunity to respond, but did not on the advice of his union counsel. (Doc. 32, ¶ 23; Doc. 51, *Pl. SMF,* ¶ 23.) On June 3, 2010, Jarbola sent

Mazzoni a letter terminating him as an employee of the DA's Office.  (Doc 33-1.)  He also sent a letter to the Personnel Director for Lackawanna County, informing her that Mazzoni had been terminated.  (Doc. 33-2).

The Lackawanna County Detectives Association ("LCDA," "the union") is the exclusive collective bargaining representative for all Lackawanna County Detectives, including Mazzoni.  (Doc. 36, ¶ 2.)  Lackawanna County and the LCDA were parties to a collective bargaining agreement effective January 2006, which was extended to January 2014.  (Doc. 26, ¶ 4.)  Under this contract, no employee could be discharged "without good cause."  (Doc. 1, *Ex. A*.)  Plaintiff puts forth evidence to demonstrate that shortly after he was terminated, the union held a meeting and unanimously decided to pursue his grievance.  (Doc. 51,  *Pl. SMF,* ¶ 41; Doc. 50, ¶ 8.)  The deposition of Brian Kosch, a fellow detective, attests to this.  (Doc. 33-32, *Kosch Dep.* 28:4-30:7.)  Both Defendant LCDA and County Defendants argue that this meeting did not occur, and present supporting evidence in the form of deposition testimony.  (Doc. 32, ¶ 41; Doc. 36, ¶ 8.)  After the union made the initial decision to pursue the grievance, the union's leadership sent emails to keep the membership apprised of the ongoing progress of the grievance, in which it expressed its plans to take the grievance to arbitration.  (Doc. 50, ¶ 8.)

On June 4, 2010, Detective Thomas J. Davis, President of the LCDA, submitted a grievance to Jarbola regarding Mazzoni's termination, claiming that there was no just cause for termination.  (Doc 32, ¶ 26.)  On June 8, Jarbola sent a letter to an attorney for the LCDA, stating that he did not believe the grievance was arbitrable, and that he was denying the grievance on the merits because there was just cause for Mazzoni's termination.  (*Id.* at ¶ 28.)  On June 9, Detective Davis, on behalf of the LCDA and Mazzoni, submitted a memo to the Human Resources Director of Lackawanna County regarding the next step of the grievance procedure, "step 3," to be conducted by the Human Resources Department.  (*Id.* at ¶ 29.)  On July 2, the Human Resources Department conducted step 3 of the grievance procedure.  (*Id.* at ¶¶ 30-31.)

On July 12, the Human Resources Director sent a letter to a LCDA lawyer and

Detective Davis that the grievance was denied.  (*Id.* at ¶ 32.)  On that same day, Detective Davis, on behalf of the LCDA and Mazzoni, submitted a memo to Human Resources providing notice to proceed to arbitration.  (*Id.* at ¶ 33.)  The Association completed every step of the grievance process except for arbitration, and had begun to schedule an arbitration.  (*Id.* at ¶ 34.)  Prior to September, the union members received numerous notices that the matter was going to arbitration, and no evidence reflects that anyone voice opposition.  (Doc. 50, ¶ 8.)

In early September 2010, the LCDA had a meeting at which no vote was taken as to whether to proceed with Mazzoni's grievance.  (Doc. 32. at ¶ 36.)  Plaintiff asserts the meeting was held because Jarbola called for it and announced that everyone had to attend.  LCDA meetings are not usually mandatory.  (Doc. 51, *Pl. SMF,* ¶¶ 42-43.)  Plaintiff also asserts that at that meeting, a detective demanded that the association vote not to go to arbitration based on things that Jarbola had said to him.  (*Id.* at ¶ 41.)  Plaintiff further states that a number of detectives said that Jarbola had told them that if they voted to pursue the grievance, members of the detective unit were going to be brought up on federal charges related to wiretapping.  (*Id.*)  Jarbola admits that he told them they could be witnesses in federal court on a civil rights claim.  (*Id.* at ¶ 48 ).

Following this controversy, Detective Davis claims that he sought the advice of LCDA's attorney on how to proceed because he thought it had a legal duty to pursue the grievance.  (Doc. 36, ¶ 12.)  The attorney suggested that he hold a vote.  (*Id.*)  At the subsequent LCDA meeting on or around September 29, the LCDA voted via a secret ballot not to take Mazzoni's grievance to arbitration.  (Doc. 51, *Pl. SMF,* ¶¶ 37-38.)  On October 19, the LCDA withdrew the grievance pursuant to that vote.  (*Id.* at ¶ 40.)

**B. Procedural Background**

Plaintiff Robert Mazzoni filed a complaint commencing this action against District Attorney Jarbola, Lackawanna County, the DA's Office, and the LCDA on December 2, 2011.  (*Compl.,* Doc 1.)  His complaint contains four causes of action.  Count I is a claim against the County and the District Attorney's Office for a violation of the First and

Fourteenth Amendments pursuant to 42 U.S.C. § 1983.  Count II brings the same claim against Mr. Jarbola in his individual capacity as District Attorney.  Count III is a claim against the LCDA for unlawfully conspiring with County Defendants to violate Mazzoni's First and Fourteenth Amendment rights pursuant to 42 U.S.C § 1983 and § 1985. Count IV is a claim against the LCDA for a breach of the duty of fair representation and for conspiring with the County Defendants to breach this duty of fair representation to Mazzoni.  Mr. Mazzoni seeks monetary damages and equitable remedies.

The LCDA filed a motion to dismiss Counts III and IV of Mazzoni's complaint on February 7, 2012, which I denied.  (*Order,* Doc. 14.)  Discovery is now complete.  On April 30, 2014, Defendants Andrew Jarbola, Lackawanna County, and Lackawanna County District Attorney's Office (collectively the "County Defendants") filed a Motion for Summary Judgment (Doc. 30), including a supporting Statement of Facts (Doc. 32), Appendix of Exhibits (Doc. 33), and Brief in Support of Motion (Doc. 34).  Also on April 30, 2014, Defendant Lackawanna County Detectives Association (LCDA) filed a Motion for Summary Judgment (Doc. 35), along with a Statement of Facts (Doc. 36), Affidavit in Support (Doc. 37), and Brief in Support of Motion (Doc. 38).

Mazzoni filed a Brief in Response to County Defendants' Motion for Summary Judgment on June 16, 2014 (Doc. 52), and a Statement of Facts (Doc. 51).  The same day, Mazzoni filed an answer to the LCDA's Motion for Summary Judgment (Doc. 49), and a Statement of Facts (Doc. 50).  On July 14, County Defendants filed a Response (Doc. 58) to Plaintiff's Counterstatement of Facts, with a supporting Brief (Doc. 59).

On July 21, Mazzoni filed a Motion for leave to file a sur reply brief (Doc. 60) to County Defendants' Reply Brief in support of their Motion for Summary Judgment (Doc. 59), in order to address new arguments they had raised.  On July 23, I issued an order denying as moot Plaintiff's unopposed motion, because the arguments discussed for the first time in County Defendants' Reply Brief (Doc. 59) were waived for the purposes of summary judgment.  (Doc. 61.)

These motions for summary judgment are ripe for disposition.

## II. Legal Standard

**A. Summary Judgment**

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Wright v. Corning*, 679 F.3d 101, 103 (3d Cir. 2012) (quoting *Orsatti v. N.J. State Police*, 71 F.3d 480, 482 (3d Cir. 1995)). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. *See Edelman v. Comm'r of Soc. Sec.*, 83 F.3d 68, 70 (3d Cir. 1996). Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *Anderson*, 477 U.S. at 248. An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id*.

Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law. *See Howard Hess Dental Labs., Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 251 (3d Cir. 2010). The moving party may present its own evidence or, where the non-moving party has the burden of proof, simply point out to the court that "the non-moving party has failed to make a sufficient showing on an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"When considering whether there exist genuine issues of material fact, the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's

9

favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). Once the moving party has satisfied its initial burden, the burden shifts to the non-moving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *Anderson*, 477 U.S. at 256-57. The Court need not accept mere conclusory allegations, whether they are made in the Complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

"To prevail on a motion for summary judgment, the non-moving party must show specific facts such that a reasonable jury could find in that party's favor, thereby establishing a genuine issue of fact for trial." *Galli v. New Jersey Meadowlands Comm'n*, 490 F.3d 265, 270 (3d Cir. 2007) (citing Fed. R. Civ. P. 56(e)). "While the evidence that the non-moving party presents may be either direct or circumstantial, and need not be as great as a preponderance, the evidence must be more than a scintilla." *Id*. (quoting *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005)). In deciding a Motion for Summary Judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

### III. Discussion

### A. County Defendants' Motion for Summary Judgment

#### 1. First Amendment Claims

Lackawanna County, Lackawanna County District Attorney's Office, and District Attorney Andrew J. Jarbola comprise the "County Defendants." The County Defendants moved for summary judgment as to all of Plaintiff Mazzoni's claims against them: violation of his First and Fourteenth Amendment rights, and conspiracy with Defendant LCDA to violate these rights.

Mazzoni asserts that in firing him for expressing his intent to run for Sheriff, the County Defendants deprived him of his rights of speech, association, political affiliation and his exercise of political freedom to run for office, as guaranteed by the First

Amendment–incorporated to the states by the Fourteenth Amendment–in violation of 42 U.S.C. § 1983.  (*Compl.,* ¶ 43.)  He also claims that they deprived him of the right to procedural due process by firing him without prior written notice of the allegations agaisnt him, and without a prior hearing.  (*Id.* at ¶ 22.)

Mazzoni claims that stating his intent to run for office was constitutionally protected, that this constitutionally-protected conduct was a substantial and motivating factor in the Defendants' adverse employment actions, and the reasons Defendants put forth for firing him were pretextual. Defendants assert that Mazzoni was fired because of his disciplinary history and improper behavior.

In their motion for Summary Judgment and accompanying documents, County Defendants only addressed Mazzoni's claims that they violated his right to free speech with respect to his constitutional claims.  As I held in my order on July 23, 2014 (Doc. 61), because County Defendants did not address Mazzoni's other constitutional claims–that they violated his First Amendment right to political affiliation, association, and exercise of political freedom, and his Fourteenth mendment right to procedural due process–in their Brief, they were denied the right to make these arguments in their Reply Brief.  Thus, these arguments are waived for the purposes of Summary Judgment.  Because the County Defendants did not address these claims in their arguments for their Motion for Summary Judgment, they will not be granted Summary Judgment on these matters.

Governing substantive law is federal constitutional law.  Mazzoni's constitutional claims are brought pursuant to 42 U.S.C. § 1983.  Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen . . . or other person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . ."  42 U.S.C. § 1983.  Section 1983 is not itself a source of substantive rights, but a method for vindicating federal rights secured by the United States Constitution or federal statutes.  *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).

To prevail, a public employee claiming that his employer retaliated against him for

11

exercising his right to free speech must establish three elements:

> First, he must establish that his speech was protected. Second, he must demonstrate that he suffered some adverse employment action by his employer. Next, he must prove that his protected speech was a substantial or motivating factor for the adverse employment action. If the plaintiff meets this burden, the defendant can still defeat the claim by establishing that he would have taken the same action absent the plaintiff's protected speech.

*Matsey v. Westmoreland Cnty.*, 185 F. App'x 126, 132 (3d Cir. 2006). The first element is a question of law, whereas the rest of the analysis comprises questions of fact. *Curinga v. City of Clairton*, 357 F.3d 305, 310 (3d Cir. 2004).

With respect to the first element, Mazzoni's speech was protected speech. The Supreme Court has set out a framework in cases where a government employee sues his employer under the First Amendment right to free speech:

> the employee must show that he or she spoke as a citizen on a matter of public concern. . . . Even if an employee does speak as a citizen on a matter of public concern, the employee's speech is not automatically privileged. Courts balance the First Amendment interest of the employee against 'the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'

*Borough of Duryea, Pa. v. Guarnieri*, 131 S. Ct. 2488, 2493 (2011) (quoting *Pickering v. Board of Ed. of Township High School Dist. 205, Will Cty.,* 391 U.S. 563, 568 (1968)).

The first step in this inquiry is to determine whether the employee spoke as a citizen on a matter of public concern. *Lane v. Franks*, 134 S. Ct. 2369, 2378 (2014) (citing *Garcetti v. Ceballos*, 547 U.S. 410,410 (2006)). Speech regarding the electoral process involves a matter of public concern. *Curinga*, 357 F.3d at 310.

Furthermore, neither party has demonstrated that the County had an interest in suppressing Mazzoni's speech that outweighed his interest. "A citizen who accepts public employment 'must accept certain limitations on his or her freedom.'" *Borough of Duryea*, 131 S. Ct. 2488, 2494 (citing *Garcetti,* 547 U.S. at 418). The government, as an employer, has authority to regulate the speech of its employees "[w]hen someone who is paid a salary so that she will contribute to an agency's effective operation begins to do or say things that detract from the agency's effective operation . . . ." *Borough of*

12

*Duryea*, 131 S. Ct. at 2494 (citing *Waters v. Churchill,* 511 U.S. 661, 675 (1994) (plurality opinion)). Neither party has asserted that it was necessary for the government to curtail Mazzoni's speech in order to serve its interest as an employer. Mazzoni's speech did not relate to the office's effective operation.

There remains a dispute of material fact as to whether Mazzoni ever engaged in the speech that underlies this claim. While Mazzoni asserts throughout his complaint and his statement of facts that he told Jarbola that he was running for office, both the County Defendants and the LCDA dispute this material fact.

With respect to the second prong, it is plain that Mazzoni suffered an adverse action from his employer when he was terminated from his position as a detective.

A dispute of material fact in this action exists with respect to the third prong of the *Matsey* test: whether Mazzoni's protected speech–his expressed intent to run for the Sheriff's office–was a substantial or motivating factor for his firing. To prove this causal connection, Mazzoni must demonstrate "either an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or a pattern of antagonism coupled with timing to establish a causal link. In the absence of that proof the plaintiff must show that from the evidence gleaned from the record as a whole the trier of the fact should infer causation." *Lauren W. ex rel. Jean W. v. DeFlaminis,* 480 F.3d 259, 267 (3d Cir. 2007).

Mazzoni asserts that in his case, the six weeks between when he alleges he first mentioned running for office to Jarbola, and when he was terminated constitutes an unusually suggestive temporal proximity. This court has "suggest[ed] that the difference in time must be measured in days, rather than in weeks or months, to establish causation on its own." *Gulick v. City of Pittston*, 995 F. Supp. 2d 322, 335-36 (M.D. Pa. 2014) (quoting *Conklin v. Warrington Twp.*, No. 06–2245, 2008 WL 2704629, at *12 (M.D. Pa. July 7, 2008)). The Court has found that a "period of twenty-two days is too lengthy to give rise to an inference of causation." *Id.* Thus, six weeks is too long a period to establish a causal link. Second, there is no evidence in the record to establish

13

causation through "a pattern of antagonism coupled with timing."  *See Lauren W.,* 480 F.3d at 267.  Mazzoni has not argued that a pattern of antagonism existed during his employment with the City, and a review of the record does not demonstrate that such circumstances existed.  However, when examining the evidence gleaned from the record as a whole, in the light most favorable to Mazzoni, a trier of fact could infer causation, based on the fact that given the decades-long time span of Mazzoni's employment and history of misbehavior, his firing occurred shortly after he allegedly informed Jarbola that he intended to run for sheriff.  Mazzoni received disciplinary citations for many years without facing repercussions—it was only after he expressed his intent to run for sheriff that he was fired.

There is also a material dispute of fact as to whether the County Defendants would have taken the same action—terminating Mazzoni—absent Mazzoni's protected speech.  Moving party has not put forth enough evidence to put beyond dispute that the same employment action would have been taken even in the absence of Mazzoni's protected activity.  It is unclear whether the reasons that Jarbola mentioned to Mazzoni in their May 26, 2010 meeting, and listed in his letter of June 3, 2010 (Doc. 33-1) were the actual reason for Mazzoni's firing, or merely a pretext.

Taking the facts in a light most favorable to Mazzoni, a reasonable jury could find that these reasons were pretextual, and furthermore, that the County would not have fired him absent Mazzoni's protected speech.  The main evidence to support this is that the majority of the events that Defendants list in their Brief as the reasons for the firing occurred many, many years before Mazzoni was fired.  The County seemingly tolerated Mazzoni's behavior for many years, which Mazzoni asserts was because of his good results, up until shortly after Mazzoni's statement about running for Sheriff.  In the years immediately preceding his firing, Mazzoni had largely ceased engaging in misconduct.  Both parties proffered enough evidence to put the fact of why Mazzoni was fired in dispute.  Whether or not the County's stated reasons were pretextual is an essential material fact, as the outcome of this case depends on it. Without demonstrating that a

reasonable jury could not find that Mazzoni was not fired for the County's stated reasons, and these reasons were pretextual, movant cannot prevail on its Motion for Summary Judgment with respect to Defendant's First Amendment Claim.

Should defendant Jarbola be found to have violated Mazzoni's constitutional rights, the County and the DA's Office would be liable as well.  A municipality is liable for the actions of an employee "if an official with authority has ratified the unconstitutional actions of a subordinate, rendering such behavior official for liability purposes." *McGreevy v. Stroup,* 413 F.3d 359, 367 (3d Cir. 2005) (citing *St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)); *see also LaVerdure v. Cnty. of Montgomery*, 324 F.3d 123, 125-26 (3d Cir. 2003).  Under Pennsylvania law, a District Attorney is a county official, not a state official.  *Pettit v. Namie,* 931 A.2d 790, 797 (Pa. Commw. Ct. 2007) (citing *Carter v. City of Phila.*, 181 F.3d 339, 349–50 (3d Cir. 1999) ("Pennsylvania's Constitution expressly defines District Attorneys as county rather than state officers.")).  Jarbola, as District Attorney, had the authority to make personnel decisions, and Mazzoni's firing was ratified by the County and DA's Office. The County Human Resources Department reviewed and approved his decision.

The County Defendants also argue that Mazzoni's § 1983 claim is barred with respect to Jarbola because as a public official, he has qualified immunity against claims that he infringed on constitutional rights.  However, at this stage, it is not clear that Jarbola is entitled to qualified immunity, which only "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Thus, for Jarbola to be covered by qualified immunity, the rights of Mazzoni that he is said to have violated must be clearly established ones.

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [state actor] that his conduct was unlawful in the situation he confronted."  *Saucier v. Katz,* 533 U.S. 194, 201 (2001).

*See also Pearson*, 555 U.S. at 223 (no longer requiring courts to assess the *Saucier* factors in sequential order).  As discussed above, the right that Mazzoni asserts was violated is a clearly established right: a public employee's speech on the electoral process is constitutionally protected under the First Amendment.  *Curinga v. City of Clairton*, 357 F.3d 305, 310 (3d Cir. 2004).  Jarbola, an attorney, reasonably should have known that to fire an employee on the basis of protected speech would violate that employee's First Amendment right.

### 2. Conspiracy Claims

County Defendants also move for summary judgment with respect to Plaintiff Mazzoni's claim that they colluded and conspired with the LCDA to deprive him of his civil rights under 42 U.S.C. § 1983.

To demonstrate a conspiracy under section 1983, "a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right under color of law," and an overt act in furtherance.  *Royster v. Beard*, 308 F. App'x 576, 579 (3d Cir. 2009) (quoting *Parkway Garage, Inc. v. City of Phila.*, 5 F.3d 685, 700 (3d Cir. 1993)).  This includes "combination, agreement, or understanding among all or between any of the Defendants to plot, plan, or conspire to carry out the alleged chain of events."  *Panayotides v. Rabenold*, 35 F.Supp.2d 411, 419 (E.D. Pa.1999).

When viewing the evidence in the light most favorable to Mazzoni, he has offered enough evidence to demonstrate that a reasonable jury could find this to be the case. Mazzoni put forth evidence that Jarbola and the LCDA conspired so that the LCDA would withdraw Mazzoni's grievance.  Jarbola called a meeting of the members of the LCDA to hold a vote on whether to take Mazzoni's grievance to arbitration–something which had never happened before.  Having already begun the arbitration process, the LCDA withdrew Mazzoni's grievance as a result of this vote.  Furthermore, Plaintiff has put forth sufficient evidence to call into dispute whether the members of the LCDA voted against taking Mazzoni's grievance to arbitration because Jarbola told them that if they took the grievance to arbitration, there would be investigated for wiretap fraud.

Because the facts viewed in the light most favorable to the non-moving party, resolving all possible inferences in his favor, could lead a reasonable jury to find for Plaintiff Mazzoni, County Defendants will not prevail on their Motion for Summary Judgment with respect to Mazzoni's conspiracy claim.

### 3. Punitive Damages

In County Defendants' Motion for Summary Judgment, they ask that Mazzoni's claims for punitive damages with respect to his claims under Section 1983 be dismissed. Summary judgment is appropriate here, and I will dismiss Plaintiff's requests for punitive damages under Count II (Doc. 1, ¶ 9). "A plaintiff is not entitled to damages on a § 1983 claim for a deprivation of constitutional rights absent a showing that a state official's conduct 'is shown to be motivated by evil motive or intent' or 'involves reckless or callous indifference to the federally protected rights of others.'" *Michel v. Levinson*, 437 F. App'x 160, 164 (3d Cir. 2011) (quoting the Supreme Court's decision on punitive damages in Section 1983 claims in *Smith v. Wade,* 461 U.S. 30, 56 (1983)).

Retaliatory motive is not enough to meet the intent standard required of the Defendant in order to receive punitive damages in Section 1983 claims: "it is clear . . . that punitive damages require more than the retaliatory motive itself." *Brennan*, 350 F.3d at 429-30.  In *Brennan*, the Court found that while it did not condone the contended retaliatory behavior of a government employer, his behavior did not rise to the level required for punitive damages. *Id*.

With respect to his retaliation claim, Plaintiff has not put into evidence or even alleged that the County Defendants acted recklessly or callously.  Thus, Plaintiff's request for punitive damages for his retaliation claim will be dismissed.

## B. LCDA's Motion for Summary Judgment

The LCDA moves for Summary Judgment as to all of Plaintiff Mazzoni's claims against it: that it conspired with the County Defendants to violate his First and Fourteenth Amendment rights, pursuant to 42 U.S.C. § 1983 and § 1985, and also breached its state law duty to him of fair representation (Doc. 35).

### 1. Constitutional Claims

Only a state actor can be liable for deprivation of a constitutional right under 42 U.S.C. § 1983. *Leshko v. Servis,* 423 F.3d 337, 339 (3d Cir. 2005). The LCDA argues that it not a proper defendant under § 1983, since it is a private party and did not engage in state action. (Doc. 38, 7-8.) It is well-settled that private actors in certain circumstances may be regarded as acting under color of state law pursuant to § 1983. *See, e.g., Donnell v. Corr. Health Servs., Inc.,* 405 Fed.Appx. 617, 622 n. 5 (3d Cir. 2010). Actions "under color of law" are considered the equivalent of "state action" under the Fourteenth Amendment. *Leshko,* 423 F.3d at 339. A private party can be held liable for a violation of § 1983 when it conspires with state officials who act under color of state law. Mazzoni claims that the LCDA conspired with the County Defendants to deprive him of his constitutional rights, while the LCDA asserts that it did not.

To establish a § 1983 conspiracy claim against a private actor, a plaintiff must show that a private actor and at least one of the state actors named as a defendant reached an understanding to deny the plaintiff his or her constitutional rights. *Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (citing *Kost v. Kozakiewicz*, 1 F.3d 176, 185 (3d Cir. 1993)); *see also McCleester v. Mackel,* No. 06–120, 2008 WL 821531, at *11 (W.D. Pa. Mar.27, 2008). "Establishing the existence of this 'understanding,' however, is really nothing more than another way to show state action as required by § 1983 when a private party is alleged to have violated that statute." *Id.* Thus the analysis on this point is identical to the question of whether the parties conspired. As discussed in III.A.2 above, there are enough material facts in dispute on the matter of whether the parties conspired to preclude summary judgment at this stage.

### 2. Breach of Duty of Fair Representation Claim

Summary judgment is also not appropriate with respect to Plaintiff's Breach of Duty of Fair Representation claim against the LCDA because there exist genuine issues of material fact.

18

Mazzoni asserts that the LCDA violated the union's duty of representation required under Pennsylvania law: Act 111 of 1968, 43 P.S. § 217.1, *et seq*., and the Pennsylvania Labor Relations Act ("PLRA"), 43 P.S. § 211. 1, *et seq*. Pennsylvania Courts follow the federal model and apply the same duty of representation as set forth by the United States Supreme Court. See, e.g., *Martino v. Transp. Workers' Union of Phila., Local 234*, 480 A.2d 242, 245–48 (Pa.1984) (adopting the standard set forth in *Vaca v. Sipes*, 386 U.S. 171, 173 (1967)).

Unions have a statutory duty to fairly represent all employees within the appropriate bargaining unit. *Vaca,* 386 U.S. at 177.

> [T]o prove a claim against a union for breach of the duty of fair representation, a plaintiff must demonstrate that the union's actions are either arbitrary, discriminatory or in bad faith. A union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational.

*Vavro v. Gemini Food Mkts.*, *Inc*., 39 F. Supp. 2d 553, 559 (E.D. Pa. 1999) (citing *Air Line Pilots Ass'n Int'l v. O'Neill*, 499 U.S. 65, 67 (1991); *Vaca*, 386 U.S. at 171, 190) (internal citations omitted). A union official's grievance handling is not arbitrary or perfunctory when it is inept or negligent, nor does disagreement about strategy form a foundation for a breach of the duty of fair representation claim. *Johnson v. United Steelworkers of Am., District 7 Local Union No. 2378–B*, 843 F.Supp. 944, 946, 948 (M.D. Pa.1994).

Mazzoni argues that because the LCDA began the arbitration process, but then decided not to go to arbitration after facing pressure and threats from Jarbola, it violated its duty of fair representation to him. The LCDA argues that it did not act in bad faith in deciding to stop Mazzoni's grievance process, and that this decision was not the result of pressure from Jarbola. However, Mazzoni has put forth enough evidence to put into dispute whether the LCDA ceased the grievance process for proper reasons, and so summary judgment on this matter is precluded. The LCDA presented evidence in the form of testimony from Union President Thomas J. Davis and Jarbola that Jarbola did not influence the representation. However, Mazzoni presented evidence that the LCDA only stopped the grievance process when Jarbola threatened the members with

investigation, and that it had never before held a vote in the midst of the process to decide whether to proceed.  The LCDA also has not provided an explanation for why itdecided to hold a vote in this case, thus, a reasonable jury could deem that decision to be arbitrary.  A reasonable jury could also find that the LCDA acted in its own interest in holding the vote and not going forward with Mazzoni's grievance, violating its duty of fair representation.  Thus, Summary Judgment is precluded on this issue.

### IV. Conclusion

For the above reasons, the Motion for Summary Judgment of Defendants Andrew J. Jarbola, Lackawanna County, and the Lackawanna County District Attorney's Office with respect to Plaintiff's request for punitive damages for his retaliation claim will be granted. All other relief sought in their Motion for Summary Judgment will be denied.  Lackawanna County Detectives Association's Motion for Summary Judgment will similarly be denied.

An appropriate order follows.

October 16, 2014                              /s/ A. Richard Caputo
Date                                                  A. Richard Caputo
                                                          United States District Judge